O’Neall, J.,
delivered the opinion of the Court.
The indictment charges the defendant in three counts, as follows; to wit: 1st. That she did overreach. 2d. That she did cheat. 3d. That she did defraud one Alexander L. Gregg of sundry articles of property, by passing to him a promissory note on one L. G. Smith and John Foxworth for ten dollars, pretending that it was of that value, and that the makers were in law liable to pay, and would pay the same, when she in fact knew that they were not liable to pay, and would not pay the same. This is the substance of the charges.,
The first inquiry arises, is any offence at common law charged ? I think it is very clear there is not. It is a mere civil injury, for which the party injured might have his remedy by action of deceit. It is a mere false representation of a thing to be of value, which the defendant knew to be valueless. There is in this no offence against the public. It is in its consequences and effects confined to the parties to the transaction, and thus at once shows that no prosecution at common law can be sustained. The definition of a cheat at common law, given by Russell, in his 2d vol. 139 — the fraudulent obtaining of property of another, by any deceitful and illegal practice or token (short of felony) which affects or may affect the public, seems to give, in general terms, the most proper notion of the offence, which I have been able to meet with. It has the support of the case of the King vs. Wheatly, 2 Burr. 1125, in which the defendant was indicted for selling sixteen gallons of amber, when it had been represented by him at eighteen gallons, and sold accordingly, the defendant well knowing that the true quantity was sixteen gallons; it was held, that this was no offence, and that the judgment must be arrested. In that case, Lord Mansfield stated the rule to be, that “ The offence that is indictable must be such an one as affects the public — as if a man uses false weights and measures, and sells by them to all or many of his customers, or uses them in the general course of his dealings; so if a *284 man defrauds another, under false tokens. Eor these are deceptions that common care and prudence cannot guard against.
Speaking of the case then before the Court, and applying to it the test of the rules which he had stated, he said, “ it is a mere private deception.” The definition given in Russell, and 'the case of King vs. Wheatly, sustain fully the remarks which I made in the outset of my opinion, and show that the indictment cannot be sustained at common law. The statute 33 Henry 8, c. 1, P. L. 55, it has been supposed in the argument, may sustain the conviction; it is, therefore, now necessary to look to it. The preamble to the statute states the mischief to be, that many light and evil-disposed persons, “ had falsely and deceitfully contrived, devised and imagined privy tokens and counterfeit letters in other men’s names, unto divers persons, their special friends and acquaintances, for the obtaining of money, goods, &c.,” it is therefore enacted, that, “ if any person or persons, falsely and deceitfully, obtain or get into his or their hands or possession, any money, goods, chattels, jewels or other things, of any other person or persons, by color and means of any such false token or counterfeit letter, &c,” he should on conviction be punished by imprisonment, pillory, or other corporal pain (except pains of death) at the discretion of the Court.
Under this statute, as well as at common law, the obtaining money or goods by a false token is punished.
It is, therefore, now necessary, in this connection, to inquire what is a false token. It is somewhat difficult to define with precision, or rather to describe, a false token in all cases. Taking the preamble of the statute as our guide, we would say it must be something false and purporting to come from one not the bearer, and having in itself some private mark or sign, calculated to induce the belief that it is real, and thus to cause the person to whom it is delivered to part with his money or goods to the bearer or person delivering it. On looking into 2 Russell, 1384, I find the definition, which I have given, is substantially that which he approves. This would be enough for this part of the' case, for it is manifest that the note set out in the indictment could not be a privy false token, according to the definition or description which mas been given. But it may be well here to notice what is *285 meant by a false token at common law; for it will, perhaps, aid us in the view which we may have to take of this case under the Act of ’91. It seems to me that it is any thing which has the semblance of public authority, as false weights, measures, seals and marks of produce and manufactures, false dice, marked cards, and things of a similar kind, false and deceptive, used in unlawful games; 2 Russ. on Crimes, 1368. It is true, in looking into the books, we find, many eases of indictment, in which fraud is an essential requisite, as in cases of common cheat, forgery, and conspiracy; and some confusion has arisen from such cases being often spoken of under the general head of cheats at common law, and, therefore, mingled with the offence of cheating or swindling by false tokens. But each of them constitutes an independent and distinct offence.
It remains to consider the case under the Act of 1791, 1 Faust, 79, which provides, “if any person or persons shall inveigle or entice, by any arts or devices, any other person or persons, to play at cards or dice, or any other game, or bear a share or part in the stakes, wagers or adventures, or bet on the sides or hands of such as do or shall play as aforesaid, or shall sell, barter or expose to sale any kind of property which has been before sold, bartered or exchanged by the person so selling, bartering or exchanging, or by any person or persons to his or their benefit or advantage, in any house or other place within the State, or be a party thereto, or overreach, cheat or defraud, by any other cunning swindling act and devices, that so the ignorant and unwary, who are deluded thereby, lose their money or other property, every such person exercising such infamous practices, shall, on conviction thereof in any Court in this State, exercising criminal jurisdiction by trial by jury, be deemed guilty of enticing, inveigling, defrauding and swindling, and shall forfeit a -sum at the discretion of the Court and jury, besides refunding to the party aggrieved double the sum he was so defrauded of; and if the same be not immediately paid with costs, every such person shall be committed to the common jail, or house of correction of the district or county where such person or persons shall be convicted, there to continue for any time not exceeding six months, unless such fine or fines, with costs, be sooner paid.” What is meant in the *286 definition of the offence of swindling in this Act, by the words, “other cunning swindling arts and devices?” The Act prohibits the inveigling or enticing of a person. 1st. To play at cards or dice, or any other game. 2d. To bear a share or part in the stakes, wagers or adventures. 3d. To bet on sides or hands of such as do or shall play at cards or dice, or other games. It next prohibits the second sale, barter or exchange of the same property by the same person, and then by a sweeping clause it prohibits the overreaching, cheating or defrauding of a person by any other “ cunning, swindling arts and devices.” After this analysis of the Act, it would be plain that any cunning, swindling arts and devices in games of cards and dice, or any other unlawful game, would be within the prohibition; and this construction would be much strengthened by the preamble, which points out the mischief to be that “ a number of idle persons of ill-fame, who have no visible means of obtaining an honest and reputable livelihood, have of late infested this State, and have been too successful in carrying into effect their deceitful gambling and swindling practices, drawing into their wily snares many ignorant and unwary persons, to their prejudice.” If the question, as to the meaning of the terms alluded to, were entirely res integra, I should be inclined to think their meaning ought to be confined to cunning swindling arts and devices, in games of cards, dice or other unlawful games. But the statute has in some degree been heretofore construed. The State vs. Vaughn & Holcombe, 1 Bay, 282, would favor the idea that any mere cheat was embodied in the words of the Act; for there the obtaining horses from an ignorant countryman by threats of a criminal prosecution for horse stealing, and also by threats of his life, was held to be within the Act. But it is to be remarked that that was a mere nisi prius decision, which has never been followed. The offence certainly was mistaken. It was a clear case of conspiracy and not of swindling. In a subsequent case, The State vs. Delyon, 1 Bay, 353, it was held that the sale of a blind horse as a sound one, when the defendant knew of the defect, was not within the Act, on the ground that it was a mere civil injury. To this case all subsequent ones have yielded. In The State vs. Strange & Wilson, 2 Con. Rep. (by Mills) 138, it was held, that to overreach, cheat or defraud, by any other cunning, *287 swindling arts and devices, was the offence of cheating or swindling at common law, which were, 1st. Frauds in matters of public concern, or, 2d. Frauds in private concerns, as conspiracy, forgery or false tokens, calculated to deceive the public. It is to be noticed here that conspiracy and forgery, although frauds at common law, constitute distinct offences from that which we are considering. The offence under which this indictment endeavors to bring the defendant, is that 'of a private fraud by false tokens, calculated to deceive the public. We have already seen that the offence at common law is not charged. The Act of 1791, if extended beyond cunning, swindling arts and devices, in games of cards, dice, or other unlawful games, has been very plainly confined to private frauds, effected by false tokens. From these views, the offence charged in the indictment, is not criminal — it is a case not to be redressed by punishment, but by damages to the party injured, in the action.
The motion in arrest of judgment is granted.